The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence.
It is noted by the undersigned that two additional depositions, those being of Dr. Phillip Cope and Dr. George E. Bennett, were erroneously missing from the official record at the time the initial decision was rendered and should be included at this time. Accordingly, these two depositions are now made a part of the official record, and the undersigned shall review them as such. The Full Commission, in their discretion, have determined that there are no good grounds in this case to further rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate award.
* * * * * * * * * *
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. The employer-employee relationship existed between the plaintiff and the defendant.
2. Plaintiff's average weekly wage shall be calculated from Form 22 to be submitted by the defendant.
3. Form 18 may be received into evidence as a stipulated exhibit.
* * * * * * * * *
Accordingly, the Full Commission find as follows:
FINDINGS OF FACT
1. The plaintiff, age thirty-one at the time of the initial hearing, was married and the mother of three children. The plaintiff had an eighth grade education.
2. The plaintiff was an employee of defendant Finishes First where she did highlighting and touching up of furniture. Her job involved putting glaze on furniture and doing finishing work. The plaintiff was paid at the rate of $6.00 per hour and was required to work a forty-hour week.
3. On February 1, 1994, the plaintiff was moving a conference table which she described as being 12 to 14 feet long and four feet wide and weighing from 250 to 300 pounds. She was moving this table five to ten feet with the assistance of a co-worker. She was moving it to an area where she was then going to touch it up and finish it. On the previous work day the plaintiff had also worked on the conference tables, but on that day did not have to move them. There were men on the job who moved the table. However, on this particular day, the plaintiff moved this table and on moving the table she felt pain in her back, neck and shoulder. The pain in her back was a sharp type of pain, and the pain in her neck and shoulder was a more dull type of pain. Immediately after plaintiff experienced this pain while lifting the table, she told a co-worker, Raymond Sneltson, and he advised the plaintiff that she should tell her supervisor. Therefore, she told Doug Benfield about her injury. Mr. Benfield advised the plaintiff to tell Ms. King, who is the lady who worked in the office. The plaintiff did so and reported that she was having pain in her neck and shoulder. The plaintiff went to the hospital and saw Dr. Cort. The plaintiff reported to Dr. Cort what had occurred and that she had pain in her neck and shoulder and her lower back. Dr. Cort advised plaintiff that she probably had a muscle strain, and he prescribed Toroidal.
4. After seeing Dr. Cort, the plaintiff drove back to her job and gave her employer the note from Dr. Cort.
5. The plaintiff then left her place of employment and went home, took the muscle relaxants, and slept. She woke up hurting in her abdomen and back and was experiencing bleeding from her vagina. This was approximately 4:30 p.m. Plaintiff's pain became more severe, and she even experienced pain down her leg. On the next morning the plaintiff went to work and spoke with Mary King about her condition. Mary King advised her to see her regular doctor, who was Dr. Arch Woodard. The plaintiff saw Dr. Woodard on February 2, 1994.
6. Dr. Woodard noted as of February 2, 1994 that the plaintiff had strained herself causing back pain and also that the plaintiff had menorrhagia, which is heavy menstrual bleeding and tenderness on pelvic exam. Dr. Woodard felt like the plaintiff may have fibroids, a benign but painful condition of the uterus. Dr. Woodard next saw the plaintiff on February 23, 1994, and she was continuing to have bleeding and cramping and low grade pelvic pain. Dr. Bennett recommended a total abdominal hysterectomy on the basis of large uterine fibroids which were now symptomatic with pain and bleeding. Subsequently, Dr. Woodard, on February 28, 1994, assisted Dr. Bennett with the plaintiff's hysterectomy. The plaintiff's doctors were unable to causally relate the necessity for plaintiff's hysterectomy to her lifting injury on February 1, 1994.
7. Following her February 28, 1994 hysterectomy, the plaintiff continued to have back pain. She was treated by Dr. Phillip Cope, a chiropractor who works with Dr. Arch Woodard. She also treated with Dr. Richard F. Walton on referral from Dr. Woodard.
8. Dr. Walton diagnosed the plaintiff with right sacroiliac inflammation and dysfunction and mild rotation with numerous secondary myofacial pain syndromes that had caused muscle shortening and helped to maintain an abnormal position as well as accentuated the plaintiff's pain when first examined on June 28, 1994. Subsequently, the plaintiff experienced left sacroiliac pain. Dr. Woodard gave the plaintiff injections which would initially provide relief for approximately a month. Then she would have another flare-up of her pain and would require another injection.
9. During the period of time of plaintiff's treatment, she continued to have multiple problems inclusive of a deep venous thrombosis, blood clots, depression and emotional problems. Plaintiff had two surgeries during this period of time. Plaintiff's treating physicians were unable to causally relate her hysterectomy, her surgeries, and her blood clots to her lifting incident. They did not opine that there were not causally related but were merely unable to casually relate them. Dr. Walton even indicated that there might be some doctors who would relate the plaintiff's uterine problem and abdominal pain to her lifting incident but that he was unable to do so.
10. On February 1, 1994, the plaintiff sustained a specific traumatic incident at work when she lifted a table. This specific traumatic incident constitutes an injury by accident, and it arose out of and in the course and scope of plaintiff's employment with defendant Finishes First.
11. This incident was an unlooked for, unexpected and untoward event and constitutes an injury by accident.
12. As a result of the plaintiff's injury by accident the plaintiff has been unable to work since February 1, 1994, regardless of the fact that she has been hospitalized for surgeries and has had other medical complications. Dr. Walton specifically opined that the plaintiff was unable to work because of her back, in and of itself, and that she could not be expected to improve from her current condition and was at this time totally disabled from work. Therefore, the apportionment issue defendant raised on appeal does not appear appropriate for consideration by the undersigned. Based upon the testimony of Dr. Walton and Dr. Woodard, the undersigned find that the plaintiff, as a result of her injury by accident, suffers from bilateral sacroiliitis and an unstable joint caused by her lifting injury and is unable to work at this time.
13. Defendant employer contends that it is not subject to the provisions of the North Carolina Workers' Compensation Act; however, the undersigned find from the evidence and by its greater weight that the defendant employed three or more employees as of February 1, 1994, and is subject to the provisions of the North Carolina Workers' Compensation Act.
14. Defendant contends it is not subject to the provisions of the North Carolina Workers' Compensation Act in that it participates in a multi-state ERISA Plan administered by IAEA Benefit Trust.
15. Defendant Finishes First does not have a policy of workers' compensation insurance on file with the North Carolina Industrial Commission nor the North Carolina Department of Insurance. The North Carolina Department of Insurance has found that the plan in which the defendant participates does not qualify as a self-insured workers' compensation group in the State of North Carolina. Defendant Finishes First is therefore non insured for workers' compensation in North Carolina. There is sufficient evidence of record to make this factual determination.
16. The plaintiff's average weekly wage as calculated from Form 22 submitted by the defendant, based upon 101 days worked and total earnings of $3,073.75, is $213.03 per week which yields a compensation rate of $142.02.
* * * * * * * * *
The foregoing stipulations and findings of fact engender the following
CONCLUSIONS OF LAW
1. The plaintiff sustained a injury by accident arising out of and in the course and scope of her employment, namely a back injury which was the result of a specific traumatic incident of the work assigned. G.S. 97-2(6).
2. As a result of the accident giving rise hereto, plaintiff was rendered totally disabled from February 2, 1994 through the date of the initial hearing and continuing thereafter until she returns to work or is capable of returning to work. G.S. 97-29.
3. The plaintiff's average weekly wage is $213.03 yielding a compensation rate of $142.02, and the plaintiff is entitled to the payment of compensation at said weekly rate commencing February 2, 1994.
4. The plaintiff has been treated for various medical problems not causally related to her compensable back injury, specifically a hysterectomy, a subsequent uterine surgery, and blood clots. Defendant is not obligated to pay medical expenses for these problems. However, all other medical treatment incurred by the plaintiff is related to her compensable injury by accident, and there is a substantial likelihood that the plaintiff will continue to require medical compensation for her back injury so long as such medical treatment tends to give relief, effect a cure or to lessen plaintiff's period of disability.
5. The defendant is non insured for workers' compensation and is thus subject to the provisions of N.C.G.S. 97-94.
* * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enter the following
AWARD
1. Subject to counsel fee, the defendant shall pay to the plaintiff the sum of $142.02 per week commencing February 3, 1994 and continuing until the plaintiff returns to work or until further orders of the Industrial Commission. All of said compensation that has accrued shall be paid in a lump sum without commutation.
2. Defendant shall pay all medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto when bills for the same have been submitted to the defendant for payment.
3. A reasonable attorney fee in the amount of one-fourth of the compensation awarded to the plaintiff is approved and allowed for plaintiff's counsel. As to the plaintiff's compensation that has accrued, one-fourth of said amount shall be paid directly to plaintiff's attorney. As to compensation payable to plaintiff in the future, every fourth check shall be paid directly to plaintiff's attorney.
4. The defendant Finishes First is hereby assessed a penalty of $100.00 per day for each day of its refusal or neglect to secure the payment of workers' compensation benefits to the plaintiff commencing February 3, 1994. According to the contentions of the defendant it is not subject to the provisions of the North Carolina Workers' Compensation Act and not obligated to provide workers' compensation benefits because it is participating in an ERISA Plan. However, as a part of the ERISA Plan in which the defendant alleges it is participating, there is a provision for payment of disability benefits to injured workers. It is inconsistent to argue that it is not obligated to provide workers' compensation benefits to employees, but then at the same time participate in the plan which is designed to provide those benefits. In addition, the defendant had knowledge that their attempts to be self insured in North Carolina were not approved and that they were operating in violation of North Carolina law, yet they chose to do so anyway. The penalty herein levied against the defendant is a substantial penalty, but even though the defendant is paying money into some type of employee benefit trust, there is no legal assurance that these benefits would ever be paid to an injured worker, and thus the defendant has neither complied with North Carolina law nor given satisfactory assurance to the undersigned that it is even complying with the spirit of the North Carolina law with respect to securing benefits for injured workers. Defense counsel was advised during the pendency of this matter for decision that the Deputy Commissioner originally hearing the case was of the opinion that the defendant was in violation of this statute and should make arrangements with the North Carolina Industrial Commission to secure the plaintiff's benefits if subsequently found liable for said benefits. The undersigned are not aware of any such actions having been taken as of the date of appeal hearing and thus impose the $100.00 per day penalty. This is the maximum amount of penalty allowable, assessed because of the defendant's knowledge of the situation and its obstinate refusal in taking corrective action.
Defendant shall bear the costs.
This the ___________ day of ______________________, 1996.
 S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _______________ LAURA K. MAVRETIC COMMISSIONER
S/ _______________ J. RANDOLPH WARD COMMISSIONER
JHB/nwm 01/30/96